**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

JOSEPH VAGLICA,

Defendant.

Criminal Action No. 23-429 (CKK)

**MEMORANDUM OPINION**
(September 19, 2024)

Defendant Joseph Vaglica is one of hundreds of individuals charged with federal crimes for alleged conduct during the insurrection at the United States Capitol on January 6, 2021.  *See* ECF Nos. 1-1, 9.  This Court summarized Vaglica's alleged role in the events of that day in a previous [37] Memorandum Opinion and Order.  For this conduct, the Government charged Vaglica by Information with—among other misdemeanor offenses—Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1), and Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2).  *See* ECF No. 9.

The parties disagree about the *mens rea* required to commit these two offenses.  Specifically, they disagree about whether each offense requires that Vaglica knew that a "person protected by the Secret Service" was or would be present in the relevant "restricted building or grounds."  Upon consideration of the pleadings,[1] the relevant legal authority, and the entire record, the Court concludes that knowledge of a Secret Service protectee's presence is an element of each of these two charged offenses.

---

[1] The Court's consideration has focused on Defendant Vaglica's Brief Regarding *Mens Rea* Requirement in 18 U.S.C. § 1752(a), Def.'s Br., ECF. No. 44; the Government's Response and Memorandum on the *Mens Rea* Requirement under Counts One and Two, Gov't Br., ECF No. 50, the Government's Proposed [Jury] Instruction for the Elements, ECF No. 42-1, Vaglica's Proposed Jury Instructions, ECF No. 43, the Statement of Facts in support of the Government's Criminal Complaint, ECF. No. 1-1; and the Information, ECF No. 9.

## I. BACKGROUND

Section 1752(a) of Title 18 makes it an offense to "knowingly" engage in certain prohibited conduct in a "restricted building or grounds."  18 U.S.C. § 1752(a)(1)–(2).  The phrase "restricted building or grounds" is a term of art defined elsewhere in Section 1752 to mean "any posted, cordoned off, or otherwise restricted area" in which one of three triggering conditions is satisfied.  *Id.* § 1752(c).  One of those triggering conditions is at issue in Counts One and Two the [9] Information in this case: that "the President or other person protected by the Secret Service is or will be temporarily visiting."  *Id.* § 1752(c)(1)(B).

The Government and Vaglica disagree about whether, to convict Vaglica on Counts One and Two, the jury must find beyond a reasonable doubt that Vaglica knew that a "person protected by the Secret Service"—such as former Vice President Michael R. Pence—was or would be present at the U.S. Capitol at the time of the charged conduct.  Vaglica contends that such knowledge is an element of the offense.  Def.'s Br. at 1.  The Government reads Section 1752's *mens rea* requirement more narrowly.  Gov't Br. at 1–2.  In the Government's view, the jury need only find that Vaglica knowingly engaged in the conduct described in 18 U.S.C. § 1752(a); that Vaglica knew the area was "posted, cordoned off, or otherwise restricted"; and that a "person protected by the Secret Service" was in fact present.  *Id.*  Consistent with their respective positions, Vaglica and the Government have proposed differing jury instructions on the elements of the Section 1752 offenses charged in Counts One and Two.  *See* ECF Nos. 42-1, 43.

## II. ANALYSIS

Courts in this District have "split nearly down the middle" on the issue of whether offenses under Section 1752(a) require knowledge of a Secret Service protectee's presence.  *See United States v. Easterday*, No. 22-cr-404, __ F. Supp. 3d __, 2024 WL 1513527, at *10 (D.D.C. Apr. 8, 2024) (JEB) (collecting cases).  Several have concluded, consistent with Vaglica's position, that

knowledge of the presence of a Secret Service protectee is an element of the offense for which the Government must prove that the defendant acted "knowingly." *See, e.g.*, *United States v. Samsel*, No. 21-cr-537, ECF No. 345, at 32–33 (D.D.C. Feb. 9, 2024) (JMC); *United States v. Groseclose*, No. 21-cr-311, __ F.Supp.3d __, 2024 WL 68248, at *9 (D.D.C. Jan. 5, 2024) (CRC); *United States v. Elizalde*, 704 F.Supp.3d 244, 254 (D.D.C. Dec. 1, 2023) (CJN); *United States v. Hostetter*, No. 21-cr-391, 2023 WL 4539842, at *1, *4 (D.D.C. July 13, 2023) (RCL).  Several others have held, consistent with the Government's position, that the presence of a Secret Service protectee is not an element of the offense, concluding instead that such presence is merely a jurisdictional hook to which Section 1752's *mens rea* requirement does not attach.  *See, e.g.*, *Easterday*, 2024 WL 1513527, at *10; *United States v. Meacham*, No. 23-287 (D.D.C. June 18, 2024) (JDB) (oral ruling); *United States v. Daniele*, No. 23-cr-143 (D.D.C. June 14, 2024) (APM) (oral ruling); *United States v. Warnagiris*, No. 21-cr-382, 2024 WL 1328510, at *2 (D.D.C. Mar. 28, 2024) (PLF); *United States v. Chambers*, No. 23-cr-300, ECF No. 45 at 13–14 (D.D.C. Mar. 14, 2024) (DLF); *United States v. Kenyon*, No. 21-cr-101 (D.D.C. Mar. 12, 2024) (ABJ) (oral ruling); *United States v. Nester*, No. 22-cr-183-2 (D.D.C. Mar. 5, 2024) (TSC) (oral ruling); *United States v. Carnell*, No. 23-cr-139, 2024 WL 639842, at *14 (D.D.C. Feb. 15, 2024) (BEH); *United States v. Rhine*, No. 21-cr-687, ECF No. 104, at 4 (D.D.C. Apr. 24, 2023) (RC); *United States v. Griffin*, No. 21-cr-092, ECF No. 106, at 330–32 (D.D.C. Mar. 22, 2022) (TNM).

Whether a criminal statute's *mens rea* attaches to an element of an offense "is a question of congressional intent."  *Rehaif v. United States*, 588 U.S. 225, 228 (2019).  Because "statutory text is the 'best evidence' of congressional intent," the Court begins with the text. *Tataranowicz v. Sullivan*, 959 F.2d 268, 276 (D.C. Cir. 1992) (quoting *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991)).

The text supports Vaglica's position that the statute's *mens rea* of "knowingly" applies to everything that follows it, including the reference to the presence of a "person protected by the Secret Service."  *See* 18 U.S.C. § 1752(a), (c)(1)(B).  "[C]ourts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element."  *Flores-Figueroa v. United States*, 556 U.S. 646, 652 (2009).  Similarly, courts generally presume that "the word 'knowingly' applies not just to the statute's verbs but also to the object of those verbs."  *McFadden v. United States*, 576 U.S. 186, 191 (2015).  And when a statute includes an explicit definition of a term, courts interpret the statute by considering the definition in place of the defined term.  *Tanzin v. Tanvir*, 592 U.S. 43, 47 (2020).  Applying these rules, and incorporating both the definition of "restricted building or grounds" and the relevant triggering condition into the definitions of the offenses at issue here, Section 1752(a) prohibits "knowingly" engaging in certain prohibited conduct in "any posted, cordoned off, or otherwise restricted area" that "the President or other person protected by the Secret Service is or will be temporarily visiting."  *Id.* § 1752(a), (c)(1)(B).  Because the presence of a Secret Service protectee follows the word "knowingly" and is part of the definition of the object of the offense—that is, the "restricted building or grounds"—the most natural reading of the text is that the *mens rea* of "knowingly" applies to the element that a Secret Service protectee is or will be present.

But the analysis does not end there.  Because "congressional intent can be understood only in light of the context in which Congress enacted a statute and of the policies underlying its enactment," the Court must also consider factors beyond the plain text to decide whether the *mens rea* of "knowingly" attaches to the presence of a Secret Service protectee.  *See Tataranowicz*, 959 F.2d at 276.  Here, the context and policy considerations are mixed but ultimately support the

conclusion that Section 1752(a) requires knowledge that a Secret Service protectee is or will be present in the restricted area at issue.

First among these contextual factors is the "longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" *Rehaif*, 588 U.S. at 228–29 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72, 115 (1994)). The Supreme Court has described this rule as a "presumption in favor of scienter," meaning "a presumption that criminal statutes require the degree of knowledge sufficient to 'mak[e] a person legally responsible for the consequence of his . . . act or omission.'" *Id.* at 229 (first alteration in original) (quoting *Scienter*, *Black's Law Dictionary* (10th ed. 2014)).

This presumption applies not only when a criminal statute is silent on the *mens rea* required to commit an offense, but also "with equal or greater force" when Congress has articulated a *mens rea* for an offense with multiple elements without specifying how it applies to each element. *Id.* Under those circumstances, the general *mens rea* provision applies "to all the material elements of the offense, unless a contrary purpose plainly appears." *Id.* (quoting Model Penal Code § 2.02(4) (Am. L. Inst. 1985)). Because Section 1752 is one such statute, the *mens rea* of "knowingly" applies to all material elements of the offenses defined in Section 1752(a).

However, not every provision in a criminal statute is a "material" element of the offense. *Id.* Some provisions are purely "jurisdictional." are not subject to the presumption in favor of scienter. *Id.* at 230; *see also United States v. Feola*, 420 U.S. 671, 677 n.9 (1975) (explaining that this rule applies to elements that are "jurisdictional only"). Unlike "substantive elements," which "describe the evil Congress seeks to prevent," "jurisdictional elements connect[] the law to one of Congress's enumerated powers, thus establishing legislative authority." *Torres v. Lynch*, 578 U.S.

452, 467 (2016).  The presumption of scienter does not attach to these jurisdictional elements because they "normally have nothing to do with the wrongfulness of the defendant's conduct." *Rehaif*, 588 U.S. at 230.  For that reason, "the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute."  *Feola*, 420 U.S. at 677 n.9; *see also United States v. Yermian*, 468 U.S. 63, 68–69 (1984).

There are sound arguments that the presence of a Secret Service protectee is a "jurisdictional only" element of the offenses defined in Section 1752 and that the presumption in favor of scienter therefore does not apply to it.  Several courts in this District have reached that conclusion.  *See, e.g.*, *Carnell*, 2024 WL 639842, at *6, *14; *Easterday*, 2024 WL 1513527, at *10.  However, based on the text, structure, and history of § 1752, this Court concludes that this element is substantive, rather than purely jurisdictional.

The question of whether the protectee-presence element is substantive or jurisdictional is close because, unlike many substantive elements of crimes, the presence of a Secret Service protectee is not a bright line that "separat[es] legal innocence from wrongful conduct" in the context of the offenses defined in § 1752(a).  *See Ruan v. United States*, 597 U.S. 450, 461 (2022) (quoting *X-Citement Video, Inc.*, 513 U.S. at 72–73).  The conduct described in Section 1752(a) would be wrongful regardless of whether the defendant knew that a Secret Service protectee was present.  For example, it is clearly wrongful for a person to "knowingly enter[] or remain[] in" an area that is "posted, cordoned off, or otherwise restricted" without having "lawful authority to do so."  *See* 18 U.S.C. § 1752(a)(1), (c)(1).  Local law in the District of Columbia prohibits that conduct, making it a misdemeanor to enter or remain on any public or private property "against

will of the lawful occupant or of the person lawfully in charge thereof . . . without lawful authority." D.C. Code § 22-3302.

However, the presence of a Secret Service protectee is integral to "the evil Congress [sought] to prevent" when it enacted Section 1752. *See Torres*, 578 U.S. at 467. The statute originally protected only the President, which it did in part by making it an offense to "willfully and knowingly to enter or remain in . . . any posted, cordoned off, or otherwise restricted area of a building or grounds where the President is or will be temporarily visiting." Pub. L. No. 91-644, 84 Stat. 1880, 1891–92 (1971). Congress later amended the statute to expand its protections to cover any "person protected by the Secret Service." Pub. L. No. 97-308, 96 Stat 1451 (1982).

Thirty years later, "to correct and simplify the drafting" of the statute, Congress moved the reference to the President and other Secret Service protectees into a definitional subsection and expanded the statute's protections to cover the White House, the residence of the Vice President, and the grounds of those buildings. Pub. L. No. 112-98, 126 Stat 263 (2012). The House Judiciary Committee's report recommending these amendments makes clear that Congress remained primarily concerned with the protection of the President and Vice President. *See* H.R. Rep. No. 112-9, at 2 (2011). The Committee noted that Section 1752, as amended, would help the Secret Service address trespasses and attempted trespasses "upon the grounds of the White House or Vice President's residence or, worse, breaches [of] the White House or Vice President's residence itself." *Id.* Without this statute, the committee explained, the Secret Service would be forced to "rely upon a provision in the District of Columbia Code, which addresses only minor misdemeanor infractions," to address those serious offenses. *Id.*

This history demonstrates that throughout the evolution of Section 1752, Congress has been principally concerned with punishing and deterring trespasses that threaten the safety of

Secret Service protectees, rather than with preventing trespasses into restricted areas more generally. This focus supports the conclusion that the presence of a Secret Service protectee is a substantive element of the offense, rather than a "jurisdictional only" element to which the *mens rea* requirement does not attach.

Section 1752's statutory penalties also support the conclusion that the presence of a Secret Service protectee is a substantive element of the offense. Unlike a simple trespass offense in the District of Columbia, a violation of Section 1752(a) is punishable by a fine and imprisonment for up to one year, or by a fine and imprisonment for up to 10 years if the offense is committed with a "deadly or dangerous weapon or firearm" or "results in significant bodily injury."[2] 18 U.S.C. § 1752(b); *cf.* D.C. Code § 22-3302 (providing penalty of imprisonment for not more than six months for simple trespass offenses).

Congress enacted these penalties in 2006, doubling the prior penalty of six months' imprisonment for the base offenses under Section 1752(a). Pub. L. No. 109-177, 120 Stat 192 (2006). The legislative history shows that the purpose of this change was to make the penalty for these offenses consistent with the penalty for "knowingly and willfully obstruct[ing], resist[ing], or interfer[ing] with a Federal law enforcement agent engaged in the performance of the protective functions." H.R. Rep. No. 109-333, at 110 (2005) (Conf. Rep.) (citing 18 U.S.C. § 3056(d)). Congress's decision to align the penalties for offenses under Section 1752(a) to those for the offense of "willfully obstruct[ing]" the protective functions of a federal law enforcement official, rather than to the penalties for simple trespass in the District of Columbia, supports the conclusion

---

[2] The Government correctly notes that this penalty is no more severe than the state-law penalties for "trespass on posted property" in some jurisdictions other than the District of Columbia, such as Virginia. Gov't Br. at 15 (citing Va. Code §§ 18.2-11, 18.2-119). However, the legislative history of § 1752(a) shows that Congress has been especially concerned with offenses committed in this District—including trespasses at the White House and the residence of the Vice President—that would otherwise be charged under the D.C. Code. See H.R. Rep. No. 112-9, at 2 (2011). Accordingly, the penalties relative to the D.C. Code are especially probative of Congress's intent.

that Congress was focused on offenses in which people knowingly threaten protectee safety, rather than on trespasses into restricted areas more generally.

The Government argues persuasively that statutory penalties are entitled to less weight than other evidence of congressional intent when determining whether an element is "jurisdictional only." Gov't Br. at 13–15. The Government relies primarily on *Feola v. United States*, 420 U.S. 671 (1975), in which the Court concluded that the so-called "officer-victim" requirement in the criminal statute prohibiting assaulting or impeding certain federal officers, 18 U.S.C. § 111, is "jurisdictional only," even though the penalties for certain offenses under Section 111 are harsher than many states' penalties for comparable offenses not involving federal officers. *See Feola*, 420 U.S. at 684. But *Feola* does not preclude consideration of statutory penalties in the determination of whether an element is substantive rather than purely jurisdictional. Instead, the decision is silent on this issue, holding only that there is no requirement that a defendant understand how his conduct may affect "the choice of a judicial forum" in a later prosecution. *Id.* at 685. This silence is at least instructive. Gov't Br. at 8, 13. The *Feola* dissent compared Section 111's penalties to similar state-law offenses. 420 U.S. at 702–03 (Stewart, J., dissenting). The Court's decision to take a different path leads this Court to give somewhat less weight to the statutory penalties than to other considerations based on text, structure, and history when evaluating whether the protectee-presence requirement in § 1752 is "jurisdictional only."

However, the Government's arguments and authorities do not persuade the Court to disregard penalties entirely. Whether Section 1752's *mens rea* attaches to the protectee-presence requirement is fundamentally "a question of congressional intent." *Rehaif*, 588 U.S. at 228. Because penalty provisions are an important part of the statutory scheme that Congress has enacted, they are probative of how Congress intended the statute to operate. Therefore, the Court

concludes that the penalty provisions of Section 1752 are entitled to some weight in the analysis of whether the protectee-presence element is "jurisdictional only."

The Government also analogizes the protectee-presence requirement in Section 1752 to other offense elements that courts have concluded are "jurisdictional only," but these analogies ultimately fail.  Gov't Br. 8–9, 20–22.  The government cites four statutes that it argues contain analogous "jurisdictional only" elements:  the statute prohibiting stealing or converting "any . . . thing of value of the United States," 18 U.S.C. § 641; the statute prohibiting making false statements about "any matter within the jurisdiction of any department or agency of the United States," 18 U.S.C. § 1001; the statute prohibiting injuring "any property of the United States," 18 U.S.C. § 1361; and the statute prohibiting willfully setting fires without authority "upon any lands owned or leased by . . . the United States," 18 U.S.C. § 1855.  Gov't Br. at 20–22.  The Government is correct that courts have concluded that the elements that connect each of these statutes to Congress's enumerated powers are "jurisdictional only" and not subject to the *mens rea* provisions that apply to the offenses' other elements.  *See, e.g.*, *United States v. Baker*, 693 F.2d 183, 185 (D.C. Cir. 1982) (analyzing § 641); *United States v. Yermian*, 468 U.S. 63, 74–75 (1984) (analyzing § 1001); *United States v. Krause*, 914 F.3d 1122, 1127 (8th Cir. 2019) (analyzing § 1361); *United States v. Evans*, 74 F.4th 597, 606 (4th Cir. 2023) (analyzing § 1855).  However, unlike the protectee-presence requirement in Section 1752, the jurisdictional element of each of these statutes is drawn broadly, sweeping in nearly all conduct within the reach of Congress's enumerated powers, regardless of its wrongfulness.  By contrast, the protectee-presence requirement in Section 1752 targets a narrow slice of the conduct that Congress may permissibly regulate, addressing a form of trespass that is particularly wrongful and that has unusual potential to harm the interests of the United States.  These considerations distinguish the protectee-presence

requirement in Section 1752 from the "jurisdictional only" provisions of the other statutes the Government cites and support the conclusion that the protectee-presence requirement is substantive, rather than purely jurisdictional.

Finally, the Government argues that extending the *mens rea* of "knowingly" to the protectee-presence requirement would lead to absurd and unworkable results that frustrate the purpose of Section 1752.  Gov't Br. at 26–27.  Specifically, it argues that this interpretation may present difficult problems of proof in cases involving trespasses in areas restricted for the safety of Secret Service protectees who are not widely known, such as family members of visiting foreign dignitaries.  *Id.*  But as the Supreme Court held in a different context, when Congress uses the word "knowingly" followed by a list of elements, "concerns about practical enforceability are insufficient to outweigh the clarity of the text."  *Flores-Figueroa v. United States*, 556 U.S. 646, 656 (2009).  Although the Government may be correct that being required to prove knowledge of a Secret Service protectee's presence may impair the usefulness of Section 1752 in cases involving threats or potential threats to Secret Service protectees, that is an issue for Congress—not this Court—to address in the first instance.

In sum, the Court concludes that the textual, structural, and historical evidence that the protectee-presence requirement is a substantive element of the offenses defined in Section 1752(a) outweighs the evidence that this element is purely jurisdictional.  Accordingly, the Court concludes that to prove an offense defined in Section 1752(a) under the circumstances presented in this case, the Government must prove beyond a reasonable doubt that the defendant knew that a "person protected by the Secret Service" was or would be present in the "restricted building or grounds."

The D.C. Circuit Court of Appeals is expected to decide this issue soon, and its decision will bind this Court and others in this District.  *See United States v. Griffin*, No. 22-3042 (D.C.

Cir. argued Dec. 4, 2023).  Therefore, this Court shall not delve any further into the remaining arguments developed in the thoughtful briefs and opinions that have already addressed this issue. As Chief Judge James E. Boasberg has observed, "[w]ith guidance from the D.C. Circuit forthcoming, any additional exposition would be like writing on the beach at low tide, soon to be washed away." *Easterday*, 2024 WL 1513527, at *10.

### III.  CONCLUSION

For the foregoing reasons, the Court shall instruct the jury that it is an element of the offenses charged in Counts One and Two that the defendant knew that a person protected by the Secret Service was or would be present in the restricted building or grounds.


**Dated:**  September 19, 2024                       _____/s/_____
                                                                          COLLEEN KOLLAR-KOTELLY
                                                                          United States District Judge